UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA C. MOTA,<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>        Defendant. | Case No. CV 09-7047 PJW<br><br>MEMORANDUM OPINION AND ORDER |

I.

INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance benefits ("DIB"). She claims that the Administrative Law Judge ("ALJ") erred when she: (1) found that Plaintiff was not credible; and (2) failed to properly consider the limitations imposed by Plaintiff's mental impairment. (Joint Stip. at 5-16, 23-28.) For the following reasons, the Court concludes that the ALJ erred in addressing Plaintiff's mental impairment and remands the case to the Agency for further proceedings consistent with this Opinion.

II.

SUMMARY OF PROCEEDINGS

On December 15, 2000, Plaintiff protectively filed for DIB. (Administrative Record ("AR") 124-26.)  After the Agency denied the application initially and on reconsideration, she requested and was granted an administrative hearing.  (AR 68-69, 94-100.)  On September 4, 2002, Plaintiff appeared with counsel at the hearing and testified. (AR 556-604.)  On November 27, 2002, the ALJ issued a decision denying Plaintiff's application.  (AR 70-82.)

On November 27, 2005, the Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ to obtain additional evidence concerning Plaintiff's depression and anxiety, including, "if warranted and available, a consultative mental health examination with psychological testing and medical source statements . . . ."  (AR 118.)  The Appeals Council also ordered the ALJ to obtain evidence from a medical doctor to "clarify the nature and severity of [Plaintiff's] back impairment."  (AR 119.)

On January 22, 2007, the ALJ held a hearing, at which Plaintiff again appeared with counsel and testified.  (AR 605-44.)  On March 27, 2007, the ALJ issued a new decision denying benefits.  (AR 13-34.) Plaintiff appealed the ALJ's decision to the Appeals Council and the Appeals Council denied review.  (AR 7-11.)  She then commenced this action.[1]

---

[1]  The ALJ failed to comply with the Appeal's Council's instructions to obtain medical and psychological testing/examinations. (AR 16.)  Instead, she pointed out the fallacy of the Appeals Council's reasoning and explained that, as a result, she would not comply with the mandate.  (AR 16.)  After she issued her decision, Plaintiff appealed to the Appeals Council again, and the Appeals

III.

ANALYSIS

A. <u>The Credibility Determination</u>

Plaintiff argues that the ALJ erred when she concluded that Plaintiff was not credible. She contends that the ALJ did not provide clear and convincing reasons for rejecting her testimony. (Joint Stip. at 9-16.) For the following reasons, the Court concludes that the ALJ did not err.

ALJ's are tasked with judging the credibility of witnesses. Where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). In making a credibility determination, the ALJ may take into account ordinary credibility evaluation techniques as well as the claimant's daily activities. *Id.* at 1284.[2]

Plaintiff alleged that she suffered from severe pain that limited the use of her left side as a result of an injury she sustained at work in 1997. (AR 146, 284.) At the initial hearing in 2002,

---

Council apparently chose to ignore the ALJ's refusal to follow its mandate.

[2] Some of Plaintiff's doctors included in their reports subtle and not so subtle comments suggesting that they believed that Plaintiff was exaggerating her symptoms. These comments ranged from noting that Plaintiff "does exaggerate somewhat" (AR 293), to the more nuanced, "Her subjective complaints are considerably out of proportion to the objective findings." (AR 334.) Ultimately, though, the ALJ did not find that Plaintiff was malingering, so the Court will apply the more stringent standard--i.e., specific, clear, and convincing evidence--in evaluating the ALJ's credibility findings.

3

Plaintiff testified that her back and hips hurt when she sat for a long time. (AR 564.) She estimated that she could sit for about one hour before having to get up and walk around for about 15 minutes and that she could walk comfortably for about 45 minutes before having to sit down for 20 to 30 minutes. (AR 564, 565.) She also testified that she could stand comfortably for no longer than ten or 15 minutes. (AR 566.) Plaintiff complained that her left shoulder hurt when she raised her arms, that her left knee hurt whenever she bent it, and that her left ankle hurt when she stood for a long time. (AR 565, 566.) She testified that she had been using a prescription cane to walk for the past year. (AR 567.) Plaintiff also complained of losing her grip when she lifted heavy objects with her left hand and that her left hand hurt when she lifted it. (AR 568-69.) She testified that she was taking pain medication, which helped a little bit, and receiving physical therapy twice a week, which also relieved her pain somewhat. (AR 570-71.) She explained that her doctor had prescribed daily exercises, but the exercises caused her pain. (AR 571-72.) According to Plaintiff, she had to lie down once or twice a day for a half hour to relieve her pain. (AR 572.) She also testified that she suffered from memory and concentration problems and depression. (AR 569-70, 580-81, 610.)

    The ALJ did not find Plaintiff's testimony credible. (AR 25-26.) She based this finding on the fact that: (1) Plaintiff's allegations were "out of proportion" to the objective medical findings; (2) Plaintiff's treatment for her physical and mental ailments was limited; (3) There was no objective evidence that Plaintiff suffered memory or attention problems; (4) Plaintiff's recitation of her daily physical activities suggested that she was not as limited as she

claimed; and (5) The evidence suggested that Plaintiff exaggerated her claims with her doctors and with the ALJ. (AR 25-26.) As explained below, the ALJ's reasons are legitimate and her findings are supported for the most part by this record. As such, her determination that Plaintiff was not credible will be affirmed.

The first reason offered by the ALJ to discount Plaintiff's credibility was that Plaintiff's subjective complaints could not be explained by the medical evidence. (AR 25.) The ALJ noted that Plaintiff "presents to doctors with exaggerated and out of proportion subjective complaints and non-anatomic complaints." (AR 26.) This is an appropriate basis for discounting a claimant's testimony, *see Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001), and is supported by the record.

Dr. M.I. Sami examined Plaintiff in December 1997 and noted that her complaints were "considerably out of proportion to the objective findings" and did not "correlate with normal anatomic relationships." (AR 334.) In May 2000, Dr. Wertheimer noted that Plaintiff "does exaggerate somewhat, especially in the area of the left ankle and the left shoulder." (AR 293.) After reexamining Plaintiff in July 2003, Dr. Wertheimer noted once again that she tended to exaggerate. (AR 390.) Dr. Ibrahim Yashruti examined Plaintiff in 2001 and determined that "the sensory deficit in the left arm and left leg is nonanatomic." (AR 186.) Though Plaintiff's other doctors did not report similar findings, the ALJ was tasked with resolving the conflicts in the medical evidence. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). Given this record, the ALJ's finding that Plaintiff should not be believed because she exaggerated her symptoms will be upheld.

The second reason offered by the ALJ to discount Plaintiff's testimony was that she was receiving very little, if any, treatment/ medication for what she claimed was debilitating pain. (AR 25.) The ALJ noted that Plaintiff had undergone steroid injections and had taken pain medication in the past, but also noted, for example, that in February 2001 Plaintiff reported that she was not taking any pain medication at all. (AR 25.) Almost six years later, when she testified at the second administrative hearing, Plaintiff testified that she was not receiving any treatment and that the only medication that she was taking was Motrin. (AR 610.)

An unexplained failure to obtain medical treatment for a serious medical condition is a legitimate basis to question a claimant's testimony. *See*, *e.g.*, *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) ("[T]he ALJ properly considered [the treating physician's] failure to prescribe ... any serious medical treatment for this supposedly excruciating pain"). Plaintiff failed to provide a legitimate reason for the fact that she was purportedly suffering debilitating pain but was not being treated for it or taking medication for it. As such, the Court concludes that the ALJ's second reason for finding Plaintiff incredible is legitimate and is supported by the record.

The third reason offered by the ALJ to discount Plaintiff's testimony was that she did not demonstrate any memory or attention problems--which she claimed she suffered from--when she was being examined by the examining psychiatrist or when she was testifying in the administrative hearings. (AR 25.) This finding is supported in part by the record. For example, psychiatrist Eden Magpayo, who examined Plaintiff in May 2001 in connection with her application for

benefits, found few objective abnormalities. (AR 79, 198-201.) Dr. Magpayo did not note any memory loss. (AR 200.) On the other hand, she found that Plaintiff's memory was affected by her depression and that she would be limited in her ability to focus her attention. (AR 200-01.) As to Plaintiff's testimony at the 2002 and 2007 administrative hearings, the transcripts do not reveal that Plaintiff exhibited memory or concentration problems. (AR 559-82, 609-12.) In the end, the Court finds that, though some of the evidence contradicts the ALJ's findings in this regard, her findings are, for the most part, supported by the record. For this reason, they will not be disturbed.

The fourth reason relied on by the ALJ to find that Plaintiff's claimed limitations were not credible was that her daily activities were inconsistent with her alleged limitations. Though this, too, is a legitimate reason for discounting a claimant's credibility, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Thomas*, 278 F.3d at 958-59, it is not fully supported by the record.

In a written submission prior to the first administrative hearing in 2002, Plaintiff reported that she was able to take her daughter to school, do household chores, cook dinner, grocery shop, fold and put away clothes, watch television, read the newspaper, go to church, drive, socialize, and talk on the telephone. (AR 158-62.) At the 2002 hearing, however, Plaintiff qualified many of these statements. For example, she testified that she could cook "with some help," that she could dust "a little," that she could do laundry with her daughters' help, and that she needed help with grocery shopping. (AR 574-76.) The ALJ determined that these activities were inconsistent

with Plaintiff's claim that she was limited in her ability to sit, stand, and drive. (AR 25.)

Based on Plaintiff's qualifications regarding these chores, it is difficult for the Court to conclude that her ability to perform them proves that she is not being candid when she claims that she cannot work. In fact, the level of activity claimed by Plaintiff--both in her written submission and in her testimony--is not so great as to undermine her claim that she cannot work for eight hours a day, forty hours a week. For this reason, the Court rejects the ALJ's finding that Plaintiff's daily activities support a finding that she is not credible.

The fifth reason relied on by the ALJ to discount Plaintiff's testimony was that the evidence did not support her claimed impairments. (AR 26.) The ALJ pointed out, for example, that, even though Plaintiff claimed that she had trouble thinking and reasoning and did not understand English, Plaintiff passed the U.S. Citizenship test in English. (AR 26.) The ALJ also pointed to the fact that, in the first administrative hearing, Plaintiff testified while standing and leaning on her left arm for 15 minutes, though she complained that her left arm caused her extreme discomfort. (AR 26.) The ALJ noted that, when she asked Plaintiff about this apparent contradiction at the hearing, Plaintiff denied that she had been leaning on her left arm. (AR 26.) These inconsistencies are supported by the record and are valid reasons to question a claimant's testimony. *See, e.g., Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ may rely on behavior exhibited by claimant at a hearing that undermines a claimant's alleged symptoms.)

In the end, though the Court might quibble with some of the reasons relied on by the ALJ for discounting Plaintiff's credibility, her overall finding that Plaintiff was not credible is supported by the record and will be affirmed. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (Explaining that, in the context of credibility findings, an error is harmless "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion." *Id.* (quoting *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

B.  <u>Plaintiff's Mental Impairment</u>

Relying on the opinion of reviewing psychiatrist Paul Balson, the ALJ concluded that Plaintiff was capable of performing simple, repetitive tasks, despite a mental impairment. (AR 24.) Plaintiff contends that this conclusion was in error. (Joint Stip. at 23-28.) She argues that the ALJ did not account for limitations noted by examining psychiatrist Eden Magpayo and did not provide specific and legitimate reasons for rejecting Dr. Magpayo's opinion. (Joint Stip. at 23-28.) For the following reasons, the Court agrees.

As a general rule, among the three types of physicians--(1) treating physicians (those who treat the claimant), (2) examining physicians (those who examine but do not treat), and (3) non-examining physicians (those who neither examine or treat)--the ALJ should grant the most weight to the opinion of a treating source. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Id.* Thus, in general, the opinion of the non-treating, non-examining physician is

given the least weight.  As with the opinion of a treating physician, however, the ALJ can reject an examining physician's opinion in favor of a non-treating, non-examining physician's opinion for specific and legitimate reasons supported by substantial evidence in the record. *Id.* at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

Psychiatrist Eden Magpayo performed a complete psychiatric evaluation of Plaintiff in May 2001.  (AR 198-201.)  Her examination revealed, among other things, that Plaintiff had depressive symptoms which "distract[ed] her from activities requiring some concentration and good memory.  When she is depressed, her ability to focus attention and her capacity to interact with others is limited."  (AR 200-01.)  The ALJ read Dr. Magpayo's opinion to mean that Plaintiff's "untreated depression causes some moderate limitations."  (AR 24.)

Reviewing psychiatrist Paul Balson did not examine Plaintiff. Instead, he read Dr. Magpayo's report, considered the other mental health records (of which there were few), and determined that Plaintiff was capable of performing "simple, repetitive tasks."  (AR 202-19.)  In Dr. Balson's view, Plaintiff was not restricted in activities of daily living, had mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, and pace.  (AR 212.)  The ALJ accepted Dr. Balson's opinion, explaining, "In the absence of a supported residual functional capacity assessment from a treating source showing greater functional limitations, I accept the assessment from [Dr. Balson.]" (AR 24.)

The ALJ erred in silently rejecting Dr. Magpayo's opinion and accepting Dr. Balson's opinion instead.  All things being equal, the

ALJ was required to give greater weight to Dr. Magpayo's opinion. *Lester,* 81 F.3d at 830. At a minimum, she was required to provide specific and legitimate reasons for choosing Dr. Balson's opinion over Dr. Magpayo's. *Id.* at 830-31. As such, the case must be remanded for further analysis.

The Agency disagrees. Though it implicitly concedes that the ALJ did not set forth specific and legitimate reasons for rejecting Dr. Magpayo's opinion, it argues that she was not required to because she was, in effect, accepting Dr. Magpayo's opinion, which the Agency contends was consistent with Dr. Balson's. (Joint Stip. at 28-31.) The record does not support this view.

The Court reads the ALJ's unambiguous statement that she is accepting Dr. Balson's opinion as an equally unambiguous statement that she is rejecting Dr. Magpayo's opinion. The Court's conclusion is bolstered by the ALJ's 2002 decision. There, after summarizing Dr. Magpayo's report, she discounted her opinion that Plaintiff suffered from a mental impairment because it was primarily based on Plaintiff's subjective complaints to Dr. Magpayo and the ALJ found that Plaintiff was not credible. (AR 79.) The ALJ's analysis in the 2002 decision highlights the fact that she did not believe that Dr. Magpayo's and Dr. Balson's opinions were consistent. Thus, the Court will not read the 2007 decision to mean that the ALJ had concluded that the critical portions of the opinions were the same and that, therefore, when she accepted Dr. Balson's opinion, she was, in effect, accepting Dr. Magpayo's opinion, too. Even were this the case, the ALJ should have

accepted Dr. Magpayo's opinion in the first instance, not Dr. Balson's.[3]

On remand, the ALJ will be required to address Plaintiff's alleged mental impairment and Dr. Magpayo's and Dr. Balson's opinions regarding it. If the ALJ finds that the opinions are the same, she can and should rely on Dr. Magpayo's opinion, since under the law that opinion is entitled to priority. If, instead, she determines that the opinions are not the same and further determines that Dr. Magpayo's opinion is infirm, she should provide specific and legitimate reasons for rejecting Dr. Magpayo's opinion and accepting Dr. Balson's.[4]

---

[3] In the 2007 decision, the ALJ incorporated by reference "the medical evidence reported in [her 2002] decision." (AR 19.) The Court has interpreted this to mean that the ALJ was incorporating only the medical evidence, not the analysis of that evidence, e.g., her 2002 finding that Dr. Magpayo's opinion should be discounted because it was based on Plaintiff's subjective complaints that the ALJ found incredible. (AR 79.)

[4] There are spots in the Agency's brief where it appears to be arguing that the ALJ rejected Dr. Magpayo's opinion for specific and legitimate reasons. For example, in arguing that the ALJ's decision should be affirmed, it points out that the ALJ considered the fact that there was no history of mental health treatment in the medical record and that neither Plaintiff's doctor or her lawyer referred her for treatment. (Joint Stip. at 30.) The Agency also notes that the ALJ considered Plaintiff's daily activities in determining that she was not severely impaired. (Joint Stip. at 30.) The Court has thoroughly reviewed the ALJ's decisions in this case and recognizes that it is possible that the ALJ was attempting to set forth specific reasons for rejecting Dr. Magpayo's opinion in her 2007 decision. Ultimately, however, the Court concludes that the decision is not clear and, therefore, remand is required.

IV.

CONCLUSION

For these reasons, the Agency's decision is reversed and the case is remanded to the Agency for further proceedings consistent with this Opinion.[5]

IT IS SO ORDERED.

DATED: March 18, 2011

_Patrick J. Walsh_
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\MOTA, M 7047\Memo_Opinion.wpd

---

[5] By setting forth that the ALJ is required to reconsider the psychiatrists' opinions, the Court is not suggesting that the ALJ is limited to only that narrow issue on remand. The ALJ may consider additional evidence and conduct any further hearing she deems appropriate, provided that she addresses the psychiatrists' opinions and explains her decision regarding them.